UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLEON NEAL JONES,<br><br>                    Plaintiff,<br><br>     v.<br><br>DR. AJMEL SANGHA, M.D.; K. WYATT, RN; DR IRENE PULIDO, M.D.,<br><br>                    Defendant. | CASE NO. 3:14-cv-2828-GPC-PCL<br><br>**GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT AS TO DEFENDANT SANGHA**<br><br>[ECF No. 12] |

Cleon Neal Jones ("Plaintiff") is a prisoner currently incarcerated at Centinela State Prison ("CEN") located in Imperial, California, and is proceeding pro se and in this civil action pursuant to 42 U.S.C. § 1983. Am. Compl. 1, ECF No. 6. Defendants are medical officials employed at CEN. *Id.* at 2. Jones claims Defendants acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment, by delaying treatment of complications resulting from Jones' cataract removal, with the result that Jones experienced "permanent vision loss" in his right eye. *Id.* at 3. He seeks $300,000 in general and punitive damages. *Id.* at 7.

Defendant Dr. Ajmel Sangha ("Defendant") has filed a Motion to Dismiss Plaintiff's First Amended Complaint as to Defendant Sangha, pursuant to Fed. R. Civ. P. 12(b)(6), on the grounds that Jones has failed to plead facts sufficient to state a cause

1

of action for deliberate indifference against Dr. Sangha. Mot. Dismiss 2, ECF No. 12. Dr. Sangha also argues that he cannot be sued in his official capacity in a § 1983 action. *Id.* Jones filed a Response. ECF No. 17. Dr. Sangha filed a Reply. ECF No. 18.

Based on the briefing and the applicable law, the Court GRANTS IN PART and DENIES IN PART Defendant's Motion to Dismiss the First Amended Complaint as to Defendant Sangha.

## I.  Factual Background

Jones alleges that he received a cataract removal surgery on June 6, 2013. Am. Compl. 3. Subsequently, on September 2, 2013, he informed Defendant K. Wyatt, a registered nurse, that he had "suddenly" experienced "loss [of] vision in [his] right eye." *Id.* Nurse Wyatt "reviewed [plaintiff's] medical record and saw that [he] had cataract removal surgery" on June 6, 2013. *Id.* The next day, Nurse Wyatt informed Dr. Sangha, CEN's Chief Medical Officer, of the "injury." *Id.*

Dr. Sangha then ordered a "routine evaluation" to take place "eleven days later" on September 13, 2013. *Id.* During the evaluation on September 13, 2013, Defendant Irene Pulido, a "Facility Optometrist," "reviewed [Plaintiff's] record, saw that [he] had [cataract] surgery on June 6, 2013, did an examination, . . . [and] order[ed] a follow up for second opinion by Doctor Sangha." *Id.* This "follow up" "took place on November 14, 2013." *Id.*

Jones received "surgery to reattach [the] retina" three months later, on February 11, 2014. *Id.* Jones alleges that after the surgery, the surgeon who reattached Jones' retina, "Dr. Mozayan Isfani Arash," told him that he "would have perm[a]nent vision loss in [his] right eye, because the best time to save [his] sight was 48 hours after [he first] notice[d] vision loss." *Id.*

## II.  Standard of Review

A Rule 12(b)(6) dismissal may be based on either a "'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'"

2

1 | *Johnson v. Riverside Healthcare System, LP*, 534 F.3d 1116, 1121–22 (9th Cir. 2008)
2 | (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 679 (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555 (noting that on a motion to dismiss the court is "not bound to accept as true a legal conclusion couched as a factual allegation."). "The pleading standard . . . does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citations omitted).

In analyzing a pleading, the Court sets conclusory factual allegations aside, accepts all non-conclusory factual allegations as true, and determines whether those nonconclusory factual allegations accepted as true state a claim for relief that is plausible on its face. *Iqbal*, 556 U.S. at 676–84; *Turner v. City & Cty. of San Francisco*, 788 F.3d 1206, 1210 (9th Cir. 2015) (noting that "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal.") (internal quotation marks and citation omitted). And while "[t]he plausibility standard is not akin to a probability requirement," it does "ask[] for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted). In determining plausibility, the Court is permitted "to draw on its judicial experience and common sense." *Id.* at 679.

Nevertheless, claims asserted by pro se petitioners, "however inartfully pleaded,"

3

are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519–20 (1972). Thus, courts "continue to construe pro se filings liberally when evaluating them under *Iqbal*." *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (noting that courts "have an obligation where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt.")).

### III. Eighth Amendment Deliberate Indifference Claim

#### A. General Legal Standard

The Eighth Amendment prohibits punishment that involves the "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). This principle "establish[ed] the government's obligation to provide medical care for those whom it is punishing by incarceration." *Id.* The Supreme Court has noted that "[a]n inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." *Id.*; *West v. Atkins*, 487 U.S. 42, 54–55 (1988).

Prison officials violate a prisoner's Eighth Amendment right to be free from cruel and unusual punishment if they are deliberately indifferent to the prisoner's serious medical needs. *Estelle*, 429 U.S. at 106 (1976); *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989). "Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury state a cause of action under § 1983," including when this "indifference is manifested by prison doctors in their response to the prisoner's needs." *Estelle*, 429 U.S. at 104–05 (footnotes omitted).

A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Id.* at 104. Thus, the "existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical

4

condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment." *McGuckin v. Smith*, 974 F.2d 1050, 1059–60 (9th Cir. 1992), *overrruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc); *Lopez v. Smith*, 203 F.3d 1122, 1131–32 (9th Cir. 2000); *see also Doty v. County of Lassen*, 37 F.3d 540, 546 (9th Cir. 1994).

"The requirement of deliberate indifference is less stringent in cases involving a prisoner's medical needs than in other cases involving harm to incarcerated individuals, because '[t]he State's responsibility to provide inmates with medical care ordinarily does not conflict with competing administrative concerns.'" *McGuckin v. Smith*, 974 F.2d at 1060 (quoting *Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (contrasting failure to attend to serious medical needs with the use of force during prison disturbances)).

**B.    Analysis**

Dr. Sangha does not dispute that Jones' alleged loss of vision amounted to a serious medical need. *See, e.g., Cowell v. Bannister*, 763 F.3d 1060, 1067 (9th Cir. 2014) (noting that "blindness in one eye," as well as "less severe losses of vision" such as "needed eyeglasses for double vision and loss of depth perception" have been considered serious medical needs by the federal courts (citing *Koehl v. Dalsheim*, 85 F.3d 86,88 (2d Cir. 1996))); *Singleton v. Lopez*, 577 Fed. Appx. 733, 735–36 (9th Cir. 2014) (concluding that "eye pain and swelling" and resulting "vision loss" constituted a serious medical need). Instead, Dr. Sangha argues that his actions did not rise to the level of deliberate indifference. Mot. Dismiss 6, ECF No. 12.

Before deliberate indifference can be established, Jones must show that (1) Dr. Sangha "purposefully ignore[d] or failed to respond to [his] pain or possible medical need," *McGuckin*, 974 F.2d at 1060; *see also Farmer v. Brennan*, 511 U.S. 825, 826 (1994) (noting "subjective" component of deliberate indifference test); *Wilson v. Seiter*,

501 U.S. 294, 302 (1991) ("In order to show deliberate indifference, an inmate must allege sufficient facts to indicate that prison officials acted with a culpable state of mind."); and (2) the delay in treatment was harmful, *McGuckin*, 974 F.2d at 1060 (noting that while the harm caused by delay need not necessarily be "substantial," "a finding that the inmate was seriously harmed by the defendant's action or inaction tends to provide additional *support* to a claim that the defendant was 'deliberately indifferent' to the prisoner's medical needs").

First, Dr. Sangha argues that his first order, on September 3, 2013, for a "routine evaluation" of Jones by an optometrist to occur eleven days later, shows that he "reacted promptly and appropriately" to Jones' September 2, 2013 complaint of vision loss to Nurse Wyatt. Mot. Dismiss 6. Second, he argues that as to the November 14, 2013 "follow up," and subsequent surgery on February 11, 2014, "[t]here is no allegation that Dr. Sangha had control over or anything to do with the scheduling of the surgery," and that "[e]ven if it were alleged that Dr. Sangha had some measure of control over the scheduling of the surgery, the timing of the surgery does not indicate deliberate indifference by Dr. Sangha." *Id.*

Dr. Sangha may be right that he had no control over or anything to do with the scheduling of the surgery. However, "construing the pleadings liberally and . . . afford[ing] the petitioner the benefit of any doubt," *Bretz*, 773 F.2d at 1027 n.1, Jones has pled factual allegations that allow this Court to draw "reasonable inference[s]" that both the above criteria are met, *Iqbal*, 556 U.S. at 679.

First, Jones alleges that Nurse Wyatt informed Dr. Sangha of his sudden vision loss on September 3, 2013, and that Jones' medical records indicated that he had previously had cataract surgery on June 6, 2013. Am. Compl. 3. Dr. Sangha responded by ordering a "routine evaluation" that would not take place until "eleven days later." *Id.* However, Jones alleges that following the surgery, the operating doctor informed him that he would experience "permanent vision loss" because his eye problems were

6

not addressed within "48 hours" after he initially noticed vision loss. *Id.* Thus, under the facts alleged, the Court can reasonably infer that Dr. Sangha's decision to schedule Jones for a "routine evaluation" eleven days later, rather than having him examined earlier, was harmful to Jones.

Second, Jones alleges that after he was seen by the Facility Optometrist on September 13, 2013, she "order[ed] a follow up for second opinion by Doctor Sangha that took place on November 14, 2013." *Id.* Dr. Sangha argues that Jones' First Amended Complaint "is silent as to when or if Dr. Sangha examined Plaintiff, provided a second opinion, ordered any further examinations or procedures, or engaged in any other act." Mot. Dismiss 2–3. However, the above language in the First Amended Complaint does suggest that following the initial evaluation on September 13, the Facility Optometrist referred the matter back to Dr. Sangha. Thus, the facts alleged do provided a basis from which the Court could reasonably infer that Dr. Sangha had a continuing role in monitoring Plaintiff's course of treatment, and thus in the continued delay in treating Plaintiff's vision loss.

"Once th[e]se prerequisites are met, it is up to the factfinder to determine whether or not the defendant was 'deliberately indifferent' to the prisoner's medical needs." *McGuckin*, 974 F.2d at 1061 (noting that "[a] finding that the defendants' neglect of a prisoner's condition was an 'isolated occurrence,' *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990), or an 'isolated exception,' *Toussaint v. McCarthy*, 801 F.2d 1080, 1111 (9th Cir. 1986), to the defendants' overall course of treatment of the prisoner ordinarily militates against a finding of deliberate indifference," while "a finding that the defendant repeatedly failed to treat an inmate properly or that a single failure was egregious strongly suggests that the defendant's actions were motivated by 'deliberate indifference' to the prisoner's medical needs," *id.* at 1060–61 (citations omitted)). Inadequate treatment due to malpractice, or even gross negligence, does not amount to a constitutional violation. *Estelle*, 429 U.S. at 106; *Toguchi v. Chung*, 391

7

1  F.3d 1051, 1060 (9th Cir. 2004) ("Deliberate indifference is a high legal standard."
2  (citing *Hallett v. Morgan*, 296 F.3d 732, 1204 (9th Cir. 2002); *Wood*, 900 F.2d at
3  1334)). Moreover, differences in judgment between an inmate and prison medical
4  personnel regarding appropriate medical diagnosis and treatment are not enough to
5  establish a deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir.
6  1989).

   This is not a case, however, where Jones alleges differences in judgment between
   Jones and Dr. Sangha as to appropriate medical diagnosis and treatment, but delay in
   that treatment. In *Singleton*, plaintiff suffered vision loss after prison medical officials
   neglected to treat his eye pain and swelling for over a year. *Singleton*, 577 Fed. Appx.
   at 736. The Ninth Circuit rejected the argument that this was a case of "differing
   medical opinions," concluding that Singleton had stated a claim for deliberate
   indifference. *Id.* Similarly, Jones does not allege that Dr. Sangha committed medical
   malpractice or negligence, but delay in treatment. In cases where prison medical
   officials have been found to have engaged in behavior that arguably amounted to
   malpractice or negligence, but not deliberate indifference, prison medical officials were
   found to be sufficiently "responsive," even if the medical care provided was less than
   ideal. *See Toguchi*, 391 F.3d at 1061; *see also Estelle*, 429 U.S. at 107 (noting that
   plaintiff was treated by medical personnel "on 17 occasions spanning a 3-month
   period").

   Thus, Jones has pled facts sufficient to raise more than the "sheer possibility"
   that Dr. Sangha acted with deliberate indifference. *Iqbal*, 556 U.S. at 678.

**IV.   Official Capacity Claim**

   Jones is suing Dr. Sangha both as an individual and in his official capacity. Am.
   Compl. 2. Dr. Sangha argues that he cannot be sued in his capacity as a state official
   in a § 1983 action. Mot. Dismiss. 7. State officials cannot be sued in their official
   capacity in a § 1983 action, *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71

(1989), even if they may be held personally liable for damages based upon actions taken in their official capacities, *Hafer v. Melo*, 520 U.S. 21, 31 (1991).

Thus, Dr. Sangha may not be sued in his official capacity in this § 1983 action.

**V. Conclusion and Order**

Based on the foregoing, **IT IS HEREBY ORDERED** that:

1. The Defendant's Motion to Dismiss Plaintiff's First Amended Complaint as to Defendant Sangha is **GRANTED** as to suit against the Defendant in his official capacity.

2. The Defendant's Motion to Dismiss Plaintiff's First Amended Complaint as to Defendant Sangha is **DENIED** as to suit against the Defendant in his individual capacity.

**IT IS SO ORDERED.**

DATED: September 16, 2015

HON. GONZALO P. CURIEL
United States District Judge

9