UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLEON NEAL JONES,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>DR. AJMEL SANGHA, M.D.; K. WYATT, RN; DR. IRENE PULIDO, M.D.,<br><br>　　　　　　　　Defendants. | Case No.: 3:14-cv-2828-GPC-PCL<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**[Dkt. No. 43]** |

　　　Before the Court is a Motion for Summary Judgment submitted by Defendant Ajmel Sangha, M.D. Dkt. No. 43. Plaintiff Jones has not opposed Defendant's motion. Upon review of the moving papers and the applicable law, the Court hereby **GRANTS** Defendant's Motion for Summary Judgment.

1

# BACKGROUND

On September 3, 2013, the head nurse at Centinela State Prison (CSP), K. Wyatt, attended to Plaintiff Jones. Def.'s Exhibit 1, Dkt. No. 43-4 at 4; Ajmel Sangha, M.D. Decl., Dkt. No. 43-5 at 2, ¶ 5. Jones informed Wyatt that he had lost vision in his right eye and that he had undergone cataract removal surgery on that same eye three months earlier, on June 5, 2013. *See* Def.'s Exhibit 1, Dkt. No. 43-4 at 4; Sangha Decl., Dkt. No. 43-5 at 2, ¶ 5. Wyatt referred Plaintiff to the optometry clinic. Def.'s Exhibit 1, Dkt. No. 43-4 at 4. Plaintiff's medical records indicate that Wyatt had arranged for Jones to be seen in the clinic the following morning, on September 4, 2013. *See id.*; *see also* Sangha Decl., Dkt. No. 43-5 at 2, ¶ 5. After completing the evaluation of Plaintiff, Wyatt sent a Physician's Order to the office of Defendant Ajmel Sangha, M.D., the Chief Medical Officer at CSP, seeking approval for Plaintiff's optometry appointment. *See* Sangha Decl., Dkt. No. 43-5 at 2, ¶ 5. The Physician's Order was received by Defendant's office on September 4, 2013, and at some time thereafter, Defendant approved the Order. *Id.*

The attending optometrist did not see Plaintiff on September 4, 2013. *See Def.'s* Exhibit 2, Dkt. No. 43-4 at 6. The patient log for specialty visits kept by CSP indicates that Jones was not scheduled for an optometry visit on September 4, 2013. *Id.* The log also indicates that none of the inmates with appointments to see an optometrist on September 4, 2013 were seen as scheduled "because of [the] Specialist." *Id.*

Plaintiff saw Dr. Irene Pulido, an optometrist, on September 13, 2013. Def.'s Exhibit 4, Dkt. No. 43-4 at 12; Sangha Decl., Dkt. No. 43-5 at 3, ¶ 6. Dr. Pulido completed an Ophthalmologic Examination form, which recorded her findings and recommended a referral to ophthalmology for a second opinion. Def.'s Exhibit 5, Dkt. No. 43-4 at 14; Sangha Decl., Dkt. No. 43-5 at 3, ¶ 6. The referral was routine, meaning, Dr. Pulido intended for Plaintiff to be seen by an ophthalmologist within ninety days. *See* Sangha Decl., Dkt. No. 43-5 at 3, ¶ 6. Another California Department of Corrections and Rehabilitation (CDCR) physician, not Defendant Sangha, approved Plaintiff's referral to the ophthalmologist. *Id.*

About two months later, on November 14, 2013, Defendant Sangha signed a Physician's Order that approved an off-site appointment for Plaintiff with Dr. Narendra Patel, an ophthalmologist in El Centro. *Id.* at 4, ¶ 7; *see also* Def.'s Exhibit 7, Dkt. No. 43-4 at 34. Dr. Patel, the same doctor who had performed Plaintiff's cataract removal surgery, diagnosed Plaintiff with retinal detachment. Sangha Decl., Dkt. No. 43-5 at 4, ¶ 7; Def.'s Exhibit 9, Dkt. No. 43-4 at 34.

At 6:33pm that same day, Plaintiff arrived at the Hillcrest Emergency Department of the UC San Diego Health System ("UCSD"). Def.'s Exhibit 9, Dkt. No. 43-4 at 26. He was seen by a number of physicians and ultimately diagnosed with retinal detachment by a Dr. Theodore Craig Chan, an ophthalmologist. *Id.* at 26-31. Dr. Chan indicated in his notes that there was no need for urgent intervention as to Plaintiff's retinal detachment because the condition had been present for two months and typically detachments are repaired within 7 to 10 days of occurring. *Id.* at 31. Dr. Chan requested that Plaintiff be seen in the glaucoma clinic in 2-4 weeks and that he be seen by a Dr. Aresh Mozayan on November 26, 2013 to plan for repair. *Id.* Dr. Mozayan evaluated Plaintiff on November 25, 2013. *See* Sangha Decl., Dkt. No. 43-5 at 4, ¶ 8; Def.'s Exhibit 10, Dkt. No. 43-5 at 39.[1] Defendant Sangha had approved Plaintiff's off-site visit via Physician Order that same day. Def.'s Exhibit 11, Dkt. No. 43-4 at 42.

On November 26, 2013, Defendant Sangha signed yet another Physician's Order approving Plaintiff's visit to an ophthalmologist at UCSD, per the recommendation of the previous consultation. Def.'s Exhibit 11, Dkt. No. 43-4 at 43.

---

[1] The Court observes that it is not clear from Plaintiff's medical records whether it was, in fact, Dr. Mozayan who attended to Plaintiff on November 25, 2013. *See generally* Def.'s Exhibit 10, Dkt. No. 43-5 at 29. This discrepancy however, does not create a genuine dispute of fact as it is nonetheless evident that Plaintiff was seen by a physician within the timeframe recommended by Dr. Chan. *Id.*

Finally, on December 12, 2013, Defendant Sangha signed a Physician's Order approving Plaintiff to be seen by a UCSD specialist who would perform a vitrectomy on Plaintiff's right eye within a month. Def.'s Exhibit 12, Dkt. No. 43-4 at 45.[2]

## PROCEDURAL BACKGROUND

Plaintiff filed suit against Defendant Sangha, and two other Defendants,[3] under 42 U.S.C. § 1983, alleging that their deliberate indifference to his medical needs violated the Eighth Amendment right to be free from cruel and usual punishment. FAC, Dkt. No. 6. On September 16, 2015, the Court granted Defendant Sangha's motion to be dismissed in his official capacity. Dkt. No. 19. The Court, however, denied Sangha's motion to be dismissed in his personal capacity. *Id.* About a year later, Defendant moved for summary judgment, on October 20, 2016. Def.'s Summary Judgment Motion (DMSJ), Dkt. No. 43-2. Defendant argues that there is no triable issue that he was deliberately indifferent to Plaintiff's serious medical need and that he is entitled to qualified immunity. *Id.* Plaintiff has not opposed Defendant's motion.[4]

## MOTION FOR SUMMARY JUDGMENT

Fed. R. of Civ. P. 56 empowers courts to enter summary judgment on factually unsupported claims or defenses, and thereby "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 327 (1986). Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

---

[2] According to Plaintiff's allegations in his FAC, he underwent surgery with Dr. Mozayan in February 2014. FAC, Dkt. No. 6 at 3. At that time, Dr. Mozayan allegedly told Plaintiff that he would have permanent vision loss as the best time to save his sight was within 48 hours after Plaintiff first noticed vision loss. *Id.*

[3] K.Wyatt was dismissed as a Defendant on March 23, 2015. Dkt. No. 6. Irene Pulido, M.D., never received service.

[4] The Court notes that Plaintiff failed to file an opposition in spite of having received a *Klingele/Rand* Notice informing him of the deadline and requirements for filing an opposition to Defendant's motion, as well as the consequences for failing to oppose. *See* Dkt. No. 47.

judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material when it affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. *Celotex*, 477 U.S. at 323. The moving party can satisfy this burden by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element of his or her claim on which that party will bear the burden of proof at trial. *Id.* at 322-23. If the moving party fails to bear the initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

Once the moving party has satisfied this burden, the nonmoving party cannot rest on the mere allegations or denials of his pleading, but must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. If the non-moving party fails to make a sufficient showing of an element of its case, the moving party is entitled to judgment as a matter of law. *Id.* at 325. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). In making this determination, the court must "view[ ] the evidence in the light most favorable to the nonmoving party." *Fontana v. Haskin*, 262 F.3d 871, 876 (9th Cir. 2001). The court does not engage in credibility determinations, weighing of evidence, or drawing of legitimate inferences from the facts; these functions are for the trier of fact. *Anderson*, 477 U.S. at 255.

A motion for summary judgment cannot be granted simply because the nonmoving party fails to file or serve its opposition. *See Henry v. Gill Indus. Inc.*, 983 F.2d 943, 950 (9th Cir. 1993). However, a court may grant an unopposed motion for summary judgment where examination of the claim reveals that it is appropriate to dispose of a

claim on summary judgment.  *See id.*; *Devermont v. City of San Diego*, No. 12-CV-1823-BEN KSC, 2014 WL 1877450, at *3 (S.D. Cal. May 8, 2014) (same).

## DISCUSSION

The gravamen of Plaintiff's claim is that Defendant Sangha acted with deliberate indifference to the sudden blindness in his right eye when he approved a course of treatment that delayed diagnosing him with retinal detachment.  *See* FAC, Dkt. No. 6 at 3.[5]  More specifically, Plaintiff argues that Sangha acted with deliberate indifference towards his medical needs by approving a "routine evaluation" of his right eye that took place ten days[6] after he reported vision loss.  *Id*.  That delay in treatment, Plaintiff alleged, caused him to permanently lose sight in his right eye because "the best time to save [his] sight was 48 hours after [he] noticed vision loss."  *Id.*

In his motion for summary judgment, Defendant Sangha argues that the undisputed facts belie Plaintiff's theory of deliberate indifference.  DMSJ, Dkt. No. 43-2.  Defendant contends that there is no triable issue that he acted with deliberate indifference to Plaintiff's serious medical needs because he had no involvement with Plaintiff and interacted with Plaintiff only in his executive capacity as Chief Medical Executive of Centinela State Prison.  *Id.* at 5.  Defendant further argues that he is entitled to qualified immunity because a reasonable officer in Defendant's position would not have known he was violating clearly established Eighth Amendment law by approving the medical treatment recommendations of other health providers.  *Id.*  For the reasons that follow, the Court agrees with Defendant's ultimate conclusion that that he is entitled to summary judgment on Plaintiff's § 1983 claim as a matter of law.

////

////

---

[5] Although Plaintiff has not opposed Defendant's motion, Plaintiff's theory of deliberate indifference is apparent from the FAC.
[6] Plaintiff mistakenly characterizes the delay as lasting eleven days.  *See* FAC, Dkt. No. 6 at 3.

////

## I. Eighth Amendment Violation under § 1983

An official that "subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution" is personally liable for that violation. 42 U.S.C. § 1983. "Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain'" that is proscribed by the Eight Amendment. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). A prison doctor's response to a prisoner's medical needs can manifest actionable indifference. *Id.* Indifference may also be appear where "prison officials deny, delay or intentionally interfere with medical treatment." *Hutchinson v. United States*, 838 F.2d 390, 393 (9th Cir. 1988). "An inadvertent failure to provide adequate medical care," however, "cannot be said to constitute an unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 106 (internal quotations omitted). Rather, "in order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.*

"A determination of 'deliberate indifference' involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1996). "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *Id.* In his motion for summary judgment, Defendant does not contest that Plaintiff had a serious medical need. *See generally* DMSJ. Accordingly, the focus of the Court's inquiry is on the second element of the "deliberate indifference" inquiry.

The standard of "deliberate indifference" is "less stringent in cases involving a prisoner's medical needs . . . because the State's responsibility to provide inmates with medical care ordinarily does not conflict with competing administrative concerns." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012) (internal quotations and citations

omitted). "However, there are certain minimum requirements before deliberate indifference can be established," including "a purposeful act or failure to act on the part of the defendant." *McGuckin*, 974 F.2d at 1060. Only a defendant who "purposefully ignores[s] or fail[s] to respond to a prisoner's pain or possible medical need" can be found deliberately indifferent. *Id.* Stated differently, "[a] prison official cannot be liable for deliberate indifference unless he or she 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1018 (9th Cir. 2010) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "If a person should have been aware of the risk, but was not, then the person has not violated the Eighth Amendment, no matter how severe the risk." *Gibson v. Cnty. of Washoe, Nev.*, 290 F.3d 1175, 1188 (9th Cir. 2002), *overruled on other grounds by Castro v. City of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016). "But if a person is aware of a substantial risk of serious harm, a person may be liable for neglecting a prisoner's serious medical needs on the basis of either his action or his inaction." *Id.* (quoting *Farmer v. Brennan*, 511 U.S. at 842).

### A. Analysis

The events occurring during and after Plaintiff's initial visit to CSP medical services fail to demonstrate any triable fact as to Defendant's deliberate indifference to Plaintiff's eye condition. On September 3, 2013, Wyatt evaluated Plaintiff after he presented himself to medical services with sudden blindness in his right eye. Wyatt completed a Physician's Order indicating that Plaintiff was to be seen in the optometry clinic the following morning. Wyatt noted in the Order that Plaintiff had undergone cataract removal surgery in his right eye some months earlier. Wyatt further noted that Special Services had been notified about Plaintiff's next-day appointment via a fax sent at 10:30am that morning. Wyatt then sent that Physician's Order to the office of Defendant Sangha, the Chief Medical Officer at CSP, for approval. The Physician's

Order was received by Defendant's office on September 4, 2013, and at some time thereafter, Defendant approved the Order.[7]

Only a defendant who "purposefully ignore[s] or fail[s] to respond to a prisoner's pain or possible medical need" can be found deliberately indifferent. *McGuckin*, 974 F.2d at 1059. Defendant did not ignore or fail to respond to Plaintiff's vision loss. Sangha signed a Physician's Order — completed by Wyatt on September 3, 2013 and received by Defendant's office on September 4, 2013 — approving Plaintiff's appointment with the optometry clinic on September 4, 2013. That Defendant approved Plaintiff to be seen by a specialist the day after he reported vision loss prohibits a trier of fact from concluding that Defendant acted with deliberate indifference towards Plaintiff's medical needs.

That Plaintiff was not actually evaluated by an optometrist on September 4, 2013 does not disturb this conclusion. The undisputed evidence demonstrates that Defendant approved a Physician's Order scheduling Plaintiff for an optometrist appointment on September 4, 2013; though it is unclear when, precisely, he signed the order. The undisputed evidence also demonstrates that Plaintiff was seen by an optometrist on September 13, 2013, just ten days later. Although Plaintiff, in his FAC, faults Defendant for approving a "routine evaluation" of his eye that occurred ten days later, none of the facts in the record could lead a rational trier of fact to conclude that any delay in Plaintiff's appointment was attributable to Defendant Sangha's deliberate indifference. Even assuming that Defendant was, somehow, responsible for this 10-day delay,[8] there is

---

[7] It is unclear from the Physician's Order when Defendant Sangha signed the Order. *See* Sangha Decl. at 2, ¶ 5. For the reasons stated below, however, this question of fact is not material to Plaintiff's deliberate indifference claim.

[8] This assumption is generous for two reasons. One, Defendant swears in his affidavit that "[a]lthough I cannot be certain when during the day I approved the [September 3, 2013] Order, I would have signed the Order the same day [September 4, 2013]." *Id.* Two, the undisputed evidence demonstrates that none of the inmates with optometry appointments on September 4, 2013 were seen as scheduled because the specialist failed to appear.

absolutely no evidence demonstrating that the delay was anything but inadvertent. *See Estelle*, 429 U.S. at 106 (inadvertent failure to provide adequate medical care does not constitute an unnecessary and wanton infliction of pain). Perhaps Defendant acted negligently by not procuring Plaintiff an appointment with a specialist before September 13, 2013. Perhaps he should have ordered that Plaintiff be brought to the emergency room or be seen by an ophthalmologist. Such inquiries, however, are not a question of deliberate indifference, but of negligence. *See Hutchinson*, 838 F.2d at 394 ("[m]ere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights."). "Deliberate indifference" exists only when an official acts or fails to act in spite of knowing that the prisoner faces a substantial risk of harm. *Gibson*, 290 F.3d at 1188 (quoting *Farmer*, 511 U.S. at 842). Here, there is absolutely no evidence indicating that Defendant Sangha should have known, nevertheless that he did actually know, that Plaintiff would permanently lose his sight, or would be more likely to lose his sight, if he was not immediately diagnosed with retinal detachment and placed into surgery. Accordingly, no trier of fact could review the record and find that the 10-day delay in Plaintiff's specialty appointment evinces Defendant Sangha's "deliberate indifference" to his medical needs. *See Simmons*, 609 F.3d at 1018 (quoting *Farmer v. Brennan*, 511 U.S. at 837) ("[a] prison official cannot be liable for deliberate indifference unless he or she 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'")

    The undisputed medical records, viewed as a whole, also do not present any genuine question of fact concerning whether Defendant acted with deliberate indifference. After Defendant Sangha signed the September 3, 2013 Physician's Order, he continued to approve Plaintiff's treatment recommendations in a timely fashion. On November 14, 2013, Defendant Sangha signed a Physician's Order that approved an off-site appointment with Dr. Narendra Patel, the ophthalmologist who performed Plaintiff's

10

3:14-cv-2828-GPC-PCL

cataract surgery. The appointment took place that very same day. On November 25, 2013, Defendant Sangha signed a Physician's Order approving an appointment with Dr. Mozayan. Again, the appointment took place that same day. On November 26, 2013, Defendant Sangha signed yet another Physician's Order approving an appointment with a different UCSD specialist. Yet again, the appointment took place the same day. And finally, on December 12, 2013, Defendant Sangha signed a Physician's Order that approved Plaintiff to have corrective surgery on his right eye within the month.[9] That the undisputed record demonstrates that Defendant Sangha promptly approved Plaintiff's appointments and course of treatment prohibits a rational trier of fact from concluding that he acted with deliberate indifference to Plaintiff's medical needs.

In sum, Defendant has demonstrated that there is no genuine dispute of fact that he acted with deliberate indifference towards Plaintiff's eye condition. Defendant has presented evidence, by way of Plaintiff's medical records and his own affidavit, that he never treated, evaluated, or had any personal contact with Plaintiff. Sangha Decl., Dkt. No. 43-5 at 4, ¶ 8. The undisputed evidence demonstrates that his only interactions with Plaintiff involved his approval of referrals, evaluations, and treatments recommended by other medical professionals. *Id.* And most importantly, the undisputed evidence lacks even a scintilla of evidence suggesting that Defendant Sangha, in his oversight capacity, should have been aware, or was aware, of any risk posed by not treating Plaintiff's eye condition with greater alacrity. *See Simmons*, 609 F.3d at 1018 ("[a] prison official

---

[9] Plaintiff's FAC suggests that he did not undergo surgery until February 2013. Dkt. No. 6 at 3. The Court notes, however, that even if the Court were to construe this allegation as a fact for purposes of summary judgment, it would not change the Court's decision. The record is completely devoid of any facts suggesting that Defendant was responsible for any delay in Plaintiff's surgery. Moreover, even if he was responsible, there are no facts to suggest that Defendant should have been aware, or was aware, that any delay in Plaintiff's surgery would cause serious risk to Plaintiff's medical needs. *See Simmons*, 609 F.3d at 1018 (quoting *Farmer v. Brennan*, 511 U.S. at 837) ("[a] prison official cannot be liable for deliberate indifference unless he or she 'knows of and disregards an excessive risk to inmate health or safety . . . .'"). Accordingly, no trier of fact could conclude that any delay was attributable to Defendant's deliberate indifference.

cannot be liable for deliberate indifference unless he or she 'knows of and disregards an excessive risk to inmate health or safety . . . . '"). Absent such evidence, there can be no genuine issue of fact that Defendant acted with deliberate indifference. As such, Defendant has satisfied his Rule 56 burden.

Given Defendant's evidentiary showing, it was the responsibility of Plaintiff to put forth evidence indicating that a genuine issue of fact exists. Plaintiff has failed to meet this burden. Even construing Plaintiff's FAC as a verified complaint, the complaint is devoid of facts that allow the Court to conclude that there is a genuine dispute as to deliberate indifference.[10] Accordingly, the Court **GRANTS** Defendant's motion for summary judgment on Plaintiff's § 1983 claim.

## CONCLUSION

The Court **GRANTS** Defendant's Motion for Summary Judgment.

**IT IS SO ORDERED.**

Dated: March 9, 2017

Hon. Gonzalo P. Curiel
United States District Judge

---

[10] A verified complaint may be used as an opposing affidavit under Rule 56 to the extent that it is based on personal knowledge and sets forth specific facts that are admissible in evidence. *McElyea v. Babbitt*, 833 F.2d 196, 197-98 (9th Cir. 1987) (per curiam). To verify a complaint, the plaintiff must swear or affirm that the facts in the complaint are true "under the pains and penalties" of perjury. *Schroeder v. McDonald*, 55 F.3d 454, 460 n.10 (9th Cir. 1995). Plaintiff swore to the accuracy of his First Amended Complaint. *See* FAC, Dkt. No. 6 at 7.